```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------x
                              :
STATE FARM INSURANCE COMPANY  :    Civ. No. 3:16CV00474(SALM)
                              :
v.                            :
                              :
HEIDE ORGANEK and             :    January 30, 2018
JOHN ORGANEK                  :
                              :
------------------------------x
```

**MEMORANDUM OF DECISION**

**I.   BACKGROUND**

Plaintiff State Farm Insurance Company ("State Farm") brings this action seeking "[a] declaration that the claims made in the Complaint in the Underlying Action do not give rise to a duty on the part of State Farm Insurance Company to defend or indemnify M&A Pizza Restaurant, LLC, Jonathan Prue, or Jarrett C. Toth under Section II of the policy issued by State Farm Insurance Company[.]" Doc. #35 at 9. Defendants John Organek and Heidi Organek (the "Organeks") bring a counterclaim seeking "[a] declaration that the claims made in the Counterclaim and the Underlying Complaint give rise to a duty on the part of State Farm Insurance Company [to] indemnify the defendants, M&A Pizza Restaurant, LLC, Jonathan Prue, and/or Jarrett C. Toth, under the applicable provisions of the policy issued by the plaintiff[]" and "[a]n order that the plaintiff pay to the defendants, Heidi Organek and John Organek, those sums that its

1

insureds have become legally obligated to pay as a result of the motor vehicle collision of July 23, 2013." Doc. #42 at 5.

State Farm and the Organeks consented to the jurisdiction of a Magistrate Judge on September 12, 2017, see Doc. #51, and the case was reassigned to the undersigned on September 19, 2017, see Doc. #52.[1] The case was set down for a trial to the Court on January 10, 2018. In advance of the trial, State Farm and the Organeks each filed proposed findings of fact and conclusions of law, see Doc. ##61, 62, written arguments in support of their respective positions, see Doc. ##60, 63, and replies to the other party's arguments, see Doc. ##65, 66. State Farm filed objections to the Organeks' proposed findings of fact and conclusions of law. See Doc. #67. The parties also submitted a joint trial memorandum. See Doc. #59.

The trial to the Court was held on January 10, 2018. See Doc. #72. The parties did not call any witnesses, and the parties' three joint exhibits and nine Stipulations of Fact were entered into evidence by agreement of the parties.

Having considered all of the evidence presented at trial,

---

[1] The parties filed a stipulation of voluntary dismissal under Rule 41(a)(1)(A)(ii), on January 16, 2018, dismissing M&A Pizza Restaurant, LLC, Jonathan Prue, and Jarrett C. Toth from the case, and leaving the Organeks as the only defendants. See Doc. #75. A second consent to the jurisdiction of a United States Magistrate Judge form was filed on January 19, 2018, see Doc. #77, and approved by Judge Alvin W. Thompson on January 22, 2018, see Doc. #78.

2

the Court finds that State Farm has proven by a preponderance of the evidence that the claims made in the Complaint in the Superior Court action do not give rise to a duty on the part of State Farm to defend or indemnify M&A Pizza Restaurant, LLC ("M&A Pizza"); Jonathan Prue ("Prue"); and/or Jarrett C. Toth ("Toth").

## II. **FINDINGS OF FACT**

1. Prue was employed as a delivery driver at a pizza restaurant called "DP Dough" prior to his employment with M&A Pizza. See Exh. 102a at 6-8. DP Dough was located a few doors down from M&A Pizza in Storrs, Connecticut. See id.

2. During the period of his employment with DP Dough, Prue became familiar with an owner/manager of M&A Pizza, whom he knew as Nick. See id. at 7, 12-13.

3. While working for DP Dough, Prue occasionally made deliveries for M&A Pizza. See id. at 8, 13

4. Prue was not happy with the amount of hours he was working at DP Dough. See id. at 7.

5. Prue approached M&A Pizza about working for them. See id. at 9-10, 14; Exh. 102b at 18.

6. Prue was hired by M&A Pizza as a delivery person. See Exh. 102a at 8-9. Prue's first week of work consisted of three days of six to eight hour shifts, and his second week was four days of six to eight hour shifts. See id. at 8.

7. Prue stopped working for DP Dough when he was hired by M&A Pizza. See id. at 9, 14.

8. Prue did not work at any other job while he worked for M&A Pizza. See id. at 13.

9. Prue did not make any deliveries on the side while working for M&A Pizza. See id. at 13-14.

10. Prue's relationship with M&A Pizza did not have a pre-established ending date. See id. at 11.

11. M&A Pizza paid Prue $8.00 per hour, plus delivery fees and tips. See id. at 14; Exh. 102b at 19.

12. On July 23, 2013, Prue was delivering a pizza for M&A Pizza when he was involved in an automobile accident with the Organeks. See Doc. #59 at 2, Stipulations of Fact and Law[2] Nos. 3, 4.

13. At the time of the accident, Prue was operating a vehicle owned by Toth. See Joint Stip. No. 3. Toth was not associated with M&A Pizza. See Joint Stip. No. 5.

14. The accident occurred about two weeks after Prue stopped working for DP Dough, and began working exclusively for M&A Pizza. See Exh. 102a at 8, 13; Exh. 102b at 21.

---

[2] The parties entered into nine stipulations in their Joint Trial Memorandum. See Doc. #59 at 2-3. References to these stipulations will be cited herein as "Joint Stip.".

15. The Organeks obtained a judgment against M&A Pizza in Connecticut Superior Court for personal injuries the Organeks sustained in the July 23, 2013, accident. See Joint Stip. No. 7.

16. Judgment entered in the Superior Court action on the underlying counts alleging vicarious liability as to M&A Pizza for the actions of its agent, servant and/or employee, Prue. See Joint Stip. No. 8.

17. At the time of the accident, M&A Pizza had a general liability policy ("Food Shop Policy") issued by State Farm. See Joint Stip. Nos. 1, 2. The Food Shop Policy had a policy number of 97-BF-L944-9 and effective dates of May 1, 2013, through May 1, 2014. See Joint Stip. No. 1.

18. The Food Shop Policy was in full force and effect on July 23, 2013. See Joint Stip. No. 2.

19. The Food Shop Policy includes Form CMP-4000 with endorsements CMP-4100 (Businessowners Coverage Form), CMP4207.1 (Amendatory Endorsement), CMP 4765 (Exclusion Empl. Non-Owned Auto Liab.), among other endorsement forms. See Exh. 101.

20. The policy contains the following insuring agreement:

> When a Limit of Insurance is shown in the Declarations for Coverage L-Business Liability, we will pay those sums that the insured becomes legally obligated to pay because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.
> ...

> No other obligation or liability to pay sums or perform acts or services is covered unless explictly provided for under **Section II -- Supplementary Payments.**

Exh. 101 at 000024.

    21. "Section II—Exclusions" sets forth the following relevant exclusions to coverage otherwise provided by the insuring agreement:

> Applicable to Coverage L—Business Liability, this insurance does not apply to:
>
> ...
>
> 8. **Aircraft, Auto, Or Watercraft**
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. ...
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or water craft that is owned or operated by or rented or loaned to any insured.

Id. at 000025-27.

    22. "Section II—Who Is An Insured" provides the following relevant definition of an insured:

> b. Each of the following is also an insured:
>
> (1) Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees"... but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. ...

Id. at 000032.

6

23. The policy provides the following relevant definitions:

> "Employee" includes a "leased worker." "Employee" does not include a "temporary worker".
>
> ...
>
> "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".
>
> ...
>
> "Temporary worker" means a person who is furnished to:
> a. You to substitute for a permanent "employee" on leave; or
> b. Meet seasonal or short-term workload conditions.

Id. at 000035-38.

### III. CONCLUSIONS OF LAW

**A. The Food Shop Policy**

The parties stipulate that State Farm issued M&A Pizza the Food Shop Policy, which was in full force and effect at the time of the accident. See Joint Stip. Nos. 1, 2. Under the policy, State Farm agreed to "pay those sums that the insured becomes legally obligated to pay because of bodily injury [or] property damage[.]" Exh. 101 at 000024 (internal quotation marks omitted). State Farm concedes that unless an exception to the Food Shop Policy applies, "State Farm would have to indemnify M&A Pizza Restaurant, LLC, for the underlying judgments obtained

7

by the Organeks." Doc. #66 at 2. Accordingly, the Court finds that M&A Pizza had insurance coverage through the Food Shop Policy at the time of the accident.

**B. Burden of Proof**

In an insurance coverage action such as this, the insured bears the initial burden of proving coverage. See Nationwide Mut. Ins. Co. v. Pasiak, 173 A.3d 888, 896 (Conn. 2017). Once coverage has been established, "the insurer bears the burden of proving that an exclusion to coverage applies." Id. The insurer must prove an exclusion applies by a preponderance of the evidence. See Conn. Car Rental, Inc. v. Patla, 677 A.2d 967, 971 (Conn. App. 1996) (affirming trial court's judgment that insurer established by a fair preponderance of the evidence that an exclusion applied); see also Franklin Credit Mgmt. Corp. v. Nicholas, 812 A.2d 51, 57 n.7 (Conn. App. 2002) ("The ordinary civil standard of proof is the fair preponderance of the evidence standard."). As noted above, the parties agree that there was insurance coverage. Therefore, the burden shifts to State Farm to prove by a preponderance of the evidence that Prue's accident was excluded from coverage under the Food Shop Policy.

**C. The Food Shop Policy's Auto Exception**

State Farm argues that Prue's accident was excluded from coverage by the Food Shop Policy's Auto Exception, which, in

8

relevant part, excludes "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." Exh. 101 at 000027. The Food Shop Policy defines an insured as including M&A Pizza's "'employees'... but only for acts within the scope of their employment by [M&A Pizza] or while performing duties related to the conduct of [M&A Pizza's] business." Id. at 000032. However, the policy also provides that an "'[e]mployee' does not include a 'temporary worker'." Id. at 000035. State Farm contends that the evidence demonstrates that Prue was not a temporary worker, and he was therefore an employee as defined by the Food Shop Policy.

### D. The Food Shop Policy's Temporary Worker Provision

The Food Shop Policy defines temporary worker as "a person who is furnished to: a. You to substitute for a permanent 'employee' on leave; or b. Meet seasonal or short-term workload conditions." Exh. 101 at 000038. The parties disagree as to the meaning of this provision. State Farm argues that, under Connecticut law, such a provision requires the temporary worker to have been furnished by a third party. See Doc. #66 at 6. Conversely, the Organeks maintain that the provision must be construed against State Farm due to its ambiguity, and that the provision does not mandate third-party involvement even if it is

9

unambiguous. See Doc. #65 at 3-6.

### 1. *Nationwide Mut. Ins. Co. v. Allen*

At trial, both parties acknowledged that the Court must apply the Appellate Court of Connecticut's decision in Nationwide Mut. Ins. Co. v. Allen, 850 A.2d 1047 (Conn. App. 2004), to interpret the Food Shop Policy.[3] The policy analyzed in Allen ("Allen Policy") and the Food Shop Policy contain identical definitions of "employee" and "leased worker" and nearly identical definitions of "temporary worker." See Allen, 850 A.2d at 1057; Exh. 1 at 000035-38. The Allen Policy provided: "'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." Allen, 850 A.2d at 1057. Here, The Food Shop Policy provides: "'Temporary worker' means a person who is furnished to: a. You to substitute for a permanent 'employee' on leave; or b. Meet seasonal or short-term

---

[3] The parties have not raised any choice of law issues in their briefs or at trial, and both parties rely on Connecticut law. See Doc. ##60, 63, 65, 66. The Court is constrained to follow applicable decisions of Connecticut courts when interpreting Connecticut law. See Schneider v. Schneider, 198 F. Supp. 294, 296 (D. Conn. 1961) (noting that the court is constrained to follow a Connecticut Court of Common Pleas decision "notwithstanding it is by an intermediate court"); see also, Fid. Union Tr. Co. v. Field, 311 U.S. 169, 177 (1940) ("The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State." (citations omitted)).

10

workload conditions." Exh. 101 at 000038. The slight structural difference between the two temporary worker provisions is not substantive. Therefore, the Appellate Court of Connecticut's interpretation of the temporary worker provision in Allen applies to the Food Shop Policy.

### 2. *Whether the Temporary Worker Provision Is Ambiguous*

The Organeks argue that the Court must construe the temporary worker provision against State Farm because the failure to "explicitly require that a 'temporary worker' be provided by a staffing agency[]" makes the provision ambiguous. Doc. #65 at 3-5. State Farm asserts that the provision is unambiguous as a matter of Connecticut law. See Doc. #66 at 5.

While it is true that courts must interpret insurance policies against the insurer if "the plain language of an insurance policy is found to be ambiguous[,]" R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co., 156 A.3d 539, 555 (Conn. App. 2017), the Appellate Court of Connecticut has already determined that such a temporary worker provision is "clear and unambiguous" under Connecticut law, Allen 850 A.2d at 1057. The provision in Allen, like the one at issue here, did not explicitly require that a temporary worker be provided by a staffing agency. The Court still found it to be unambiguous. See id. The Court sees no basis on which to distinguish this case.

Therefore, the provision is unambiguous, and the Court does not construe the provision against State Farm.

### 3. *Necessity of a Third Party*

State Farm argues that the Food Shop Policy requires Prue to have been furnished to M&A Pizza by a third party to qualify as a "temporary worker." See Doc. #66 at 3-8. In response, the Organeks contend that the absence of the word "you" in subsection (b) of the temporary worker provision indicates that Prue was a temporary worker even if he "was not furnished to M&A by a third party[.]" Doc. #65 at 6 (emphasis omitted). At trial, the Organeks further argued that subsection (b) should be read to include a situation in which M&A Pizza "furnished" to itself a person, to meet seasonal or short-term workload conditions.

In Allen, the court concluded that the worker in question "was not a temporary worker as defined by the policy, because he was not 'furnished' to [the insured]." Allen, 850 A.2d at 1057. The court upheld the trial court's determination that the person was not "furnished" because the insured "did not go to an employment agency, manpower service provider or any similar service" and the worker "was not employed by anyone who lent or furnished him to [the insured] as an employee." Id. Accordingly, the Court finds that Connecticut law requires Prue to have been furnished by a third party, for him to be considered a "temporary worker" as defined by the Food Shop

12

Policy.

The Court further finds that a plain reading of the temporary worker provision requires that a temporary worker must have been furnished by a third party. Under Connecticut law, "provisions in insurance contracts must be construed as laymen would understand them and not according to the interpretation of sophisticated underwriters[.]" Vermont Mut. Ins. Co. v. Walukiewicz, 966 A.2d 672, 678 (Conn. 2009) (internal quotation marks and citation omitted). "[T]he policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." Id. In common parlance, one does not typically "furnish" something to oneself. The Merriam-Webster dictionary defines "furnish" as "to provide with what is needed" or "supply, give[.]" *Furnish*, Merriam-Webster's Collegiate Dictionary (10th ed. 1997). These definitions strongly suggest that one cannot "furnish" something to oneself. Likewise, the use of "furnish" in context provided by the Dictionary suggests the need for a third party to act. See id. ("furnished food and shelter for the refugees"). Therefore, the Court finds Prue must have been "furnished" to M&A Pizza by a third party in order for him to be a temporary worker as defined in the Food Shop Policy.

**E. Prue's Employment with M&A Pizza**

State Farm contends that Prue was an employee because the evidence demonstrates that Prue was not furnished to M&A Pizza by any third party. See Doc. #66 at 8. However, the Organeks argue that Prue was a temporary worker because he was furnished to M&A Pizza by his former employer, DP Dough, to meet a short-term need. See Doc. #65 at 7-9.

The evidence indicates that Prue worked at DP Dough before he began working exclusively for M&A Pizza. See Exh. 102a at 6-7. While Prue worked for DP Dough, he sometimes also made deliveries for M&A Pizza. See id. at 8, 13. During that time period, it would be reasonable to say that DP Dough "furnished" Prue to M&A Pizza. If that "furnishing" were "to substitute for a permanent 'employee' on leave" or to "[m]eet seasonal or short-term workload conditions[,]" Prue might well have been a "temporary worker" during that time. But the uncontroverted evidence establishes that at the time of the accident, Prue was no longer working for DP Dough; he worked only for M&A Pizza; and he had no plans to return to DP Dough.

Prue's uncontroverted testimony indicates that he began working exclusively for M&A Pizza about two weeks before the accident. See Exh. 102a at 8-9, 13-14. Prue testified that M&A Pizza hired him after he personally approached M&A Pizza about working there. Id. at 7-10, 14. Prue testified that DP Dough

14

"had no issue with [him] working" for M&A Pizza because Prue "would be able to obtain hours" there. Id. at 9. Prue testified that he did not have any other job while he worked for M&A Pizza, see id. at 13, and that he took "deliveries exclusively for [M&A Pizza] and not at all for D.P. Dough." Id. at 14. Therefore, there is no indication that DP Dough was involved in Prue's hiring or employment at M&A Pizza.

The "temporary worker" provision requires the involvement of a third party. The evidence establishes that DP Dough did not "furnish" Prue to M&A Pizza. Accordingly, State Farm has proven by a preponderance of the evidence that Prue was not "furnished" to M&A Pizza by a third party. Prue therefore was <u>not</u> a "temporary worker," and he <u>was</u> an "employee" as defined by the Food Shop Policy.

**F. Coverage for the Accident**

As noted above, the Food Shop Policy's Auto Exception excludes from coverage any bodily injury and property damage arising out of an insured's operation of an auto. See Exh. 101 at 000027. An employee is considered an insured while acting within the scope of his employment or performing duties related to the conduct of M&A Pizza's business. Id. at 000032. The Court finds that Prue was an "employee" of M&A Pizza at the time of the accident. The parties stipulated that Prue was delivering a pizza for M&A Pizza when the accident occurred. See Joint Stip.

15

No. 4. That delivery was within the scope of Prue's employment. Therefore, Prue was an insured, and liability arising out of the accident is excluded from coverage. Accordingly, the claims made in the Complaint in the Superior Court action do not give rise to a duty on the part of State Farm to defend or indemnify M&A Pizza, Prue, or Toth, and State Farm does not have a duty to pay the Organeks the judgment amount entered against M&A Pizza in the Superior Court action.

## IV. CONCLUSION

As set forth above, the Court finds that plaintiff has proven by a preponderance of the evidence that the claims made in the Complaint in the Superior Court action do not give rise to a duty on the part of State Farm Insurance Company to defend or indemnify M&A Pizza, Prue, or Toth under Section II of the policy issued by State Farm Insurance Company. The Court further finds that defendants Heide Organek and John Organek have failed to prove that State Farm has a duty to pay the judgment entered against M&A Pizza in the Superior Court action.

**Therefore, the Clerk shall enter judgment in favor of plaintiff as follows: The claims made in the Complaint in the underlying Connecticut Superior Court action, <u>Organek v. M&A Pizza Restaurant LLC</u>, Docket No. HHB-CV-14-6024308-S, do not give rise to a duty on the part of State Farm Insurance Company to defend or indemnify M&A Pizza Restaurant, LLC, Jonathan Prue,**

**or Jarrett C. Toth, under Section II of the policy issued by State Farm Insurance Company. The Clerk shall also enter judgment in favor of plaintiff on the Counterclaims filed by defendants Heidi Organek and John Organek.**

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge on January 19, 2018 [Doc. #77], with any appeal to be made directly to the Court of Appeals. See Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut, this 30th day of January, 2018.

<pre>
                         /s/
            HON. SARAH A. L. MERRIAM
            UNITED STATES MAGISTRATE JUDGE
</pre>